IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 22-11538

JOHN ESPOSITO,

Petitioner-Appellant,

-v-

GDCP WARDEN,

Respondent-Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA, MACON DIVISION

_____

**APPELLANT'S BRIEF**

_____

MARCIA A. WIDDER (GA 643407)
Georgia Resource Center
104 Marietta Street NW, Suite 260
Atlanta, Georgia 30303
404-222-9202

COUNSEL FOR PETITIONER-
APPELLANT, JOHN. ESPOSITO

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JOHN ANTHONY ESPOSITO,          )
Petitioner-Appellant,           )
                                )
vs.                             )          Case No. 22-11538
                                )
GDCP WARDEN,                    )
Respondent-Appellee.            )

## CERTIFICATE OF INTERESTED PERSONS

Petitioner John Anthony Esposito's counsel hereby certifies that the following

have an interest in the outcome of this case:

1. Arceneaux, Anna (Counsel for Appellant in State-Court Successive Habeas Proceedings and State-Court Extraordinary Motion for New Trial Proceedings)

2. Baker, Thurbert (State's Counsel Upon Direct Appeal)

3. Barksdale, T. Wright III (State's Counsel in State-Court Extraordinary Motion for New Trial Proceedings)

4. Bennet, Lindsay (State Habeas Counsel for Appellant)

5. Boleyn, Susan (State's Counsel Upon Direct Appeal)

6. Bright, Fredric (District Attorney at Trial and State's Counsel Upon Direct Appeal)

7. Burleson, Hon. Alison T. (Trial Judge in State-Court Extraordinary Motion for New Trial Proceedings)

8. Burton, Beth (Federal Habeas Counsel for Appellee)

i

9.      Carr, Christopher (Federal Habeas Counsel for Appellee)

10.     Davis, Lola (Victim)

11.     Dunn, Thomas H. (State Habeas Counsel for Appellant)

12.     Emmons, Shawn, GDCP Warden (Appellee)

13.     Esposito, John (Appellant)

14.     Freidlin, Akiva (Counsel for Appellant in Federal Habeas, State-Court Successive Habeas Proceedings, and State-Court Extraordinary Motion for New Trial Proceedings)

15.     Gailey, Michael (State's Counsel at Trial)

16.     Graham, Sabrina (Counsel for Appellee in Federal Habeas and State-Court Extraordinary Motion for New Trial Proceedings)

17.     Johnson, Karen (State's Counsel Upon Direct Appeal)

18.     Kammer, Brian (State and Federal Habeas Counsel for Appellant)

19.     Kelly, Roy (Trial and Direct-Appeal Counsel for Appellant)

20.     Malcolm, Clint (Federal Habeas Counsel for Appellee)

21.     Mauldin, Allison (State's Counsel in State-Court Extraordinary Motion for New Trial Proceedings)

22.     Petrany, Stephen J. (Federal Habeas Counsel for Appellee)

23.     Prior, Hon. William A. (Trial Judge)

24.     Roberts, W. Dan (Trial and Direct-Appeal Counsel for Appellant)

ii

25.     Rodenberg, William D. (Federal Habeas Counsel for Appellee)

26.     Roselli, Emily (State Habeas Counsel for Appellant)

27.     Royal, Hon. C. Ashley (Federal Habeas District Court Judge)

28.     Salchow, Kirsten (Federal Habeas Counsel for Appellant)

29.     Schiefer, Theresa (State Habeas Counsel for Appellant)

30.     Sharkey, Kimberly (State Habeas Counsel for Appellant)

31.     Smith, Robert (Counsel for the Board of Pardons and Paroles in State Habeas Proceedings)

32.     Snider, Larry (Victim)

33.     Snider, Marguerite (Victim)

34.     Sorrells, Hon. Marvin (State Habeas Judge)

35.     Tangum, Richard (Federal Habeas Counsel for Appellee)

36.     Widder, Marcia (Counsel for Appellant in Federal Habeas, State-Court Successive Habeas Proceedings, and State-Court Extraordinary Motion for New Trial Proceedings)

37.     Woodward, Alicia (Co-Defendant)

_____
Marcia A. Widder
Attorney for Mr. Esposito

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner-Appellant John Esposito respectfully requests oral argument. It is appropriate in this capital habeas corpus matter because this appeal presents complex issues of first impression and oral argument will assist this Court in resolving the issues on appeal.

## **TABLE OF CONTENTS**

**CERTIFICATE OF INTERESTED PERSONS**.....................................................i

**STATEMENT REGARDING ORAL ARGUMENT** ......................................... iv

**TABLE OF CONTENTS** .................................................................................v

**TABLE OF AUTHORITIES** ........................................................................ vii

**JURISDICTIONAL STATEMENT** ..................................................................1

**ISSUES PRESENTED** ......................................................................................1

**INTRODUCTION**.............................................................................................2

**STATEMENT OF THE CASE** ........................................................................4

     I.    Procedural History. ................................................................................4

     II.   Statement of Relevant Facts. ................................................................7

**SUMMARY OF THE ARGUMENT** ..............................................................12

**ARGUMENT** ..................................................................................................13

     I.    Standards of Review .............................................................................13

     II.   The District Court Erred in Construing Mr. Esposito's 60(b) Motion as a Successive Habeas Petition in Disguise. ...............................................14

     III.  Rule 60(b) Provides Grounds for Reopening the Judgment.................22

          A.  Rule 60(b)(6) Authorizes Reopening the Judgment in this Case....23

          B.  In the Alternative, in the Event Discovery of Juror Misconduct Should Be Considered "Newly Discovered Evidence" Under Rule 60(b)(2), Equitable Tolling Should Apply Based on Mr. Esposito's Diligent Efforts to Discover the Evidence of Misconduct during State Habeas and Initial Federal Proceedings. .........................................30

**CONCLUSION**................................................................................................38

**CERTIFICATE OF COMPLIANCE** ..............................................................39

**NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE** 40

## TABLE OF AUTHORITIES

**Cases**

*Banister v. Davis*, 590 U.S. 504 (2020) ............................................................ 16, 22

*Barnes v. Thomas*, 938 F3d 526 (4th Cir. 2019) .....................................................28

*Barnett v. Roper*, 904 F.3d 623 (8th Cir. 2018).....................................................19

*Boechler, P.C. v. Comm'r*, 596 U.S. 199 (2022) ....................................................31

*Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37 (1st Cir. 2015)

.................................................................................................................................24

*Boyd v. Sec'y*, 114 F.4th 1232 (11th Cir. 2024).....................................................13

*Buck v. Davis*, 580 U.S. 100 (2017).................................................................. 19, 26

*Buck* v. *Thaler*, 565 U. S. 1022 (2011) ..................................................................27

*Campbell v. Miles*, No. 99-50814, 2000 U.S. App. LEXIS 39968 (5th Cir. Jul. 20,

2000) .....................................................................................................................24

*Clark v. Broomfield*, No. 97-cv-20618, 2022 U.S. Dist. LEXIS 83532 (N.D. Cal.

May 9, 2022) .........................................................................................................29

*Cox v. Horn*, 757 F.3d 113 (3d Cir. 2014)...............................................................27

*Dietz v. Bouldin*, 579 U.S. 40 (2016)......................................................................28

*Esposito v. Ford*, 141 S. Ct. 2727 (2021) .................................................................6

*Esposito v. State*, 538 S.E.2d 55 (Ga. 2000).............................................................4

*Esposito v. Warden*, 818 Fed. App'x 962 (11th Cir. June 23, 2020)........................6

*Ex parte Troha*, 462 So. 2d 953 (Ala. 1984) ...........................................30

*Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277 (11th Cir. 2000) .....................25

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ........................... 3, 10, 14, 15, 16, 20, 22

*Gregg v. Georgia*, 428 U.S. 153 (1976) ..........................................28

*Grooms v. Commonwealth*, 756 S.W.2d 131 (Ky. 1988).........................................29

*Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453 (11th Cir. 1992) ..........26

*Holland v. Florida*, 560 U.S. 631 (2010)........................................... 31, 32

*Hubbard v. Campbell*, 379 F.3d 1245 (11th Cir. 2004) ...........................................1

*In re Mitchell*, No. 13-6614, 2014 U.S. App. LEXIS 25329 (2d Cir. 2014)..........21

*In re Pickard*, 681 F.3d 1201 (10th Cir. 2012) .........................................21

*Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990).................................31

*Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454 (1975) .................................37

*Jones v. Kemp*, 706 F. Supp. 1534 (N.D. Ga. 1989)................................................28

*Kemp v. United States*, 596 U.S. 528 (2022) .................................... 18, 28

*Klapprott v. United States*, 335 U.S. 601 (1949)....................................26

*Konkel v. Bob Evans Farms*, 165 F.3d 275 (4th Cir. 1999) ....................................24

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) ........... 14, 24, 25

*Lozano v. Alvarez*, 572 U.S. 1 (2014).......................................................37

*Merilien v. Warden*, No. 2112415, 2023 U.S. App. LEXIS 23978 (11th Cir. Sept.

11, 2023) ..............................................................................25

*Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2018) ........................ 34, 35, 36, 37

*Olhausen v. Arriva Med., LLC*, 124 F.4th 851 (11th Cir. 2024) ............................12

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ...............................................................32

*People v. Harlan*, 109 P.3d 616 (Co. 2005) ...........................................................29

*Ponton v. Sec'y, Florida Dep't of Corr.*, 891 F.3d 950 (11th Cir. 2018) ...............13

*Richardson v. Thomas*, 930 F.3d 587 (4th Cir. 2019) ............................................17

*Rodriguez v. Mitchell*, 252 F.3d 191 (2d Cir. 2001) ........................................ 21, 22

*Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007) ................................................19

*Sanders v. United States*, 373 U.S. 1(1963) ...........................................................27

*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013) ......................................31

*Stansell v. Bello*, 40 F.4th 1308 (11th Cir. 2022) ...................................................13

*Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009) .....................................................27

*Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307 (11th Cir. 2000) ......................25

*United States v. Dauenhauer*, 837 Fed. App'x. 581 (9th Cir. 2021) ......................19

*United States v. Marizcales-Delgadillo*, 243 Fed. Appx. 435 (10th Cir. 2007) ......21

*United States v. McRae*, 793 F.3d 392 (4th Cir. 2015) ..................................... 33, 34

*United States v. Williams*, 56 F.4th 366 (4th Cir. 2023) ................................... 33, 34

*United States v. Williams*, 753 Fed. App'x. 176 (4th Cir. 2019) ............................33

*Waetzig v. Halliburton Energy Servs.*, 145 S. Ct. 690 (2025) ................................14

*Williams v. Chatman*, 510 F.3d 1290 (11th Cir. 2007) ...........................................16

*Williams v. Taylor*, 529 U.S. 420 (2000) ...................................................20

*Williams v. True*, 39 Fed. App'x 830 (4th Cir. 2002).............................20

*Wukoson v. United States*, No. 23-10222, 2024 U.S. App. LEXIS 10070 (11th Cir. Apr. 25, 2024) ..........................................................17

*Zakrzewski v. McDonough*, 490 F.3d 1264 (11th Cir. 2007) ..................13

### Statutes

28 U.S.C. § 2241 ...................................................................................1

28 U.S.C. § 2244 ................................................................ 3, 10, 13, 15

28 U.S.C. § 2254 .............................................................................. 20, 21

28 U.S.C. § 2255 .............................................................................. 21, 33

O.C.G.A. § 17-10-30(b) .........................................................................28

### Rules

Fed. R. App. P. 26(b) ...................................................... 35, 36, 37

Fed. R. Civ. P. 23(f) ....................................................... 34, 35

Fed. R. Civ. P. 59 .......................................................... 1, 14, 30

Fed. R. Civ. P. 6(b) ........................................................ 34, 36, 37

### Other Authorities

*Black's Law Dictionary*, 9th ed. (2022)....................................................37

## JURISDICTIONAL STATEMENT

This is an appeal from the March 30, 2022, final order by the United States District Court for the Middle District of Georgia dismissing Mr. Esposito's motion to reopen habeas proceedings pursuant to Fed. R. Civ. P. 60(b). *See* D.90; D.99. The district court had jurisdiction under 28 U.S.C. § 2241(a) and (d). It denied Mr. Esposito's motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59 (e) on November 11, 2022. D.99. Those rulings disposed of all of Mr. Esposito's claims, and he timely filed notices of appeal on April 29, 2022, and December 12, 2022. D.92; D.100. This Court has jurisdiction under 28 U.S.C. § 1291.[1]

## ISSUES PRESENTED

1. Whether, in light of the facts that the district court ruled that Mr. Esposito's juror-misconduct claim had been "abandoned" and accordingly did not address its merits, the district court err in concluding that Mr. Esposito's Rule 60(b) motion for relief from that judgment was actually a second or successive habeas petition that required circuit approval to file.

2. Whether Rule 60(b)(6) applies where a habeas petitioner discovers evidence that his capital sentence was tainted by prejudicial juror misconduct only after the completion of initial federal habeas proceedings.

---

[1] Because the district court dismissed Mr. Esposito's Rule 60(b) motion on the ground it lacked jurisdiction to consider it, 28 U.S.C. § 2253(c)(1)(A) is not implicated and no certificate of appealability ("COA") is required to appeal the court's final order. *See* Order dated March 6, 2025 (Doc. 35-1); *Hubbard v. Campbell*, 379 F.3d 1245, 1247 (11th Cir. 2004).

3. Whether equitable tolling may apply to the one-year deadline for seeking to reopen a judgment on the basis of newly discovered evidence under Rule 60(b)(2).

## **INTRODUCTION**

This case presents important questions regarding a federal court's authority to consider late-discovered juror misconduct that could undermine the fairness and reliability of a jury's decision to impose the death penalty. In this case, despite diligent efforts to investigate juror misconduct, Mr. Esposito did not learn until after his federal habeas proceedings had concluded that one of his jurors was so concerned about whether her Christian faith would permit her to sit on Mr. Esposito's capital jury that, contrary to the trial court's repeated instructions, she visited her pastor seeking his guidance about her religion's view of the death penalty after she had been questioned during voir dire, but before she was selected to serve. The juror's unauthorized meeting with her pastor provided her assurance that she could vote for the death penalty without the reservations she had expressed during voir dire.

Following some additional investigation of the juror's pastoral consultation, Mr. Esposito filed a motion pursuant to Fed. R. Civ. P. 60(b)(2) and 60(b)(6) seeking to reopen his habeas case on the basis of this new information, and additionally asked the district court to hold the case in abeyance so he could exhaust the claim in state court. D.84. As he explained, his state and federal habeas petitions had alleged juror misconduct based on improper third party contacts and exposure to extraneous

2

influences. *See* D.84-1:3-4. Because he was unable to discover evidence to support these allegations, however, the state habeas court ultimately found the juror misconduct claim procedurally defaulted, D.27-39:8, 12, a ruling left undisturbed by the Georgia Supreme Court's summary denial of review, D.27-44. And, the district court, in its final order denying federal habeas relief, ruled that the claim was abandoned and did not reach its merits. *See* D.67:85-86. *See generally* D.84-1:3-4 (brief in support of 60(b) motion). As a result, no court has ever addressed the merits of Mr. Esposito's juror misconduct claim.

The Supreme Court has explained that Rule 60(b)'s application is limited in habeas corpus cases by restrictions placed on the filing of second or successive habeas petitions under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Gonzalez v. Crosby*, 545 U.S. 524, 529-36 (2005) (discussing limitations on 60(b) motions imposed by 28 U.S.C. § 2244(b)). A habeas petitioner may not rely on Rule 60(b) to raise either new claims or claims that were previously decided on the merits. *Id.* "A motion can . . . be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* at 532 (emphasis original). Conversely, a habeas petitioner may seek to reopen the judgment "when [his] Rule 60(b) motion attacks,

3

not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Id.*

Although Mr. Esposito's juror-misconduct claims had never been adjudicated on the merits, the district court dismissed the Rule 60(b) motion on the ground it was really a second or successive habeas petition over which the court lacked jurisdiction. That determination was in error, as Mr. Esposito argues below.

<u>**STATEMENT OF THE CASE**</u>

**I.    Procedural History.**

Mr. Esposito was indicted on felony and malice murder charges, among others, in Morgan County, Georgia. D.13-1:21-24. The parties consented to a change of venue to Baldwin County. D.13-5:57. Voir dire began on September 23, 1998, and ended five days later with the selection of twelve jurors and three alternate jurors. D.13-22–D.14-6:28. On September 30, 1998, Mr. Esposito was convicted on all charges. *Esposito v. State*, 538 S.E.2d 55, 57 n.1 (Ga. 2000). On October 2, 1998, the jury sentenced him to death on the malice murder charge.[2] *Id.* The Georgia Supreme Court affirmed his convictions and sentence. *Id.* at 55.

Mr. Esposito filed a habeas petition in Butts County Superior Court. D.15-25. Although he alleged in his original and amended petitions that his trial was tainted

---

[2] The felony murder count was vacated by operation of law. *Id.*

4

by juror misconduct, *see* D.15-25:13-15; D.17-2:19-20, this claim was never developed because, despite diligent efforts, Mr. Esposito discovered no evidence to support it. Following the submission of evidence addressing other claims raised in the petition, the state habeas court denied relief. D.27-39. It ruled that the juror misconduct claim was procedurally defaulted because it had not been brought on direct appeal and no cause was shown to excuse the default. D.27-39:8, 12. The Georgia Supreme Court summarily denied Mr. Esposito's application for a certificate of probable cause to review that ruling. D.27-44.

Mr. Esposito filed a timely federal habeas petition in the District Court for the Middle District of Georgia-Macon Division. He alleged *inter alia* that his federal constitutional rights to due process, and a fair and reliable trial and sentence were violated by juror misconduct. D.1:25-27. Once again, he lacked evidence to prove this claim. He did, however, request an evidentiary hearing to develop evidence that jurors had engaged in improper communication with a deputy during a judicially unsupervised crime scene visit. *See* D.38:5-10. The district court denied the motion on the ground the claim was procedurally defaulted, the state court had properly excluded juror affidavits, and Mr. Esposito had not been diligent in seeking the information. D. 42:8.

Later, in its order denying habeas relief, the district court ruled that the juror-misconduct claim was abandoned because it had not been briefed. D.67:85-86. The

district court granted a COA as to two aspects of Mr. Esposito's ineffective-assistance-of-counsel claim unrelated to juror misconduct. D.67:88. This Court expanded the COA to add a third. *See* Order, November 10, 2015 (11th Cir. No. 15-11384). Following briefing and argument, this court affirmed the district court's denial of relief. *Esposito v. Warden*, 818 Fed. App'x 962 (11th Cir. June 23, 2020), *reh'g denied*, Sept. 15, 2020. Mr. Esposito's petition to the United States Supreme Court for a writ of certiorari was denied on June 7, 2021. *Esposito v. Ford*, 141 S. Ct. 2727 (2021).

Mr. Esposito learned of Juror Lane's improper contact with her pastor in July 2021, while conducting juror interviews in anticipation of an execution warrant. On December 29, 2021, after conducting follow-up investigation, he filed a motion in district court pursuant to Fed. R. Civ. P. 60(b) seeking to reopen his initial habeas case on the basis of the new evidence, and asked the district court to hold the case in abeyance to permit him to exhaust the claim in state court. *See* D.84 – D.84-5. Instead, on March 30, 2022, the district court dismissed the motion on the ground that it lacked jurisdiction. D.90. The court concluded that the Rule 60(b) motion was in actuality a second or successive petition, observing that Mr. Esposito "does not argue that the Court . . . wrongly decided Petitioner abandoned his general juror misconduct claim" and that the habeas petition "provided nothing more than the elements of a juror misconduct claim" and that "it was 'habeas counsel's omissions'

6

that led to the Court's previous ruling" that "did not grant or deny this claim . . . ." D.90:7-8. Accordingly, the court reasoned, the 60(b) motion "does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably.'" *Id.* On November 10, 2022, the court denied Mr. Esposito's motion to alter or amend the judgment. D.99. This appeal follows.[3]

## II.    Statement of Relevant Facts.

Voir dire in Mr. Esposito's capital trial began on September 23, 1998. A potential juror, Janice Lane reported to court that day (under her name at the time, Janice Seagraves). D.13-22:6. Before questions began, the judge gave Ms. Lane and other venirepersons these instructions:

> From this point forward it is very important that you not . . . discuss this case with anyone or allow anyone to discuss it with you. It is very important that you follow those instructions from this point forward. If anyone attempts to communicate with you in any way concerning this case, notify me of that fact immediately upon returning to court.

D.13-22:19-20.

The court then questioned potential jurors about, among other things, their views on the death penalty. Ms. Lane told the court, "I'm really undecided on how I

---

[3] This Court stayed the appeal pending resolution of Mr. Esposito's successive state habeas case raising this issue. *See* Order dated December 13, 2022. Because the most of those proceedings, including a two-day evidentiary hearing, took place after the district court had dismissed the 60(b) motion, the current federal record does not include the state court proceedings.

feel about capital punishment." D.13-24:34. When later asked by the prosecutor whether she could in fact sentence Mr. Esposito to death, she answered, "Not without some reservation," *id.* at 35, though she ultimately told the prosecutor she could vote for a death a sentence, *id.* at 37. When her voir dire was finished, the trial court inquired, "Ms. [Lane], you heard my instructions this morning about not . . . talking to anybody or letting anybody talk to you about this case? You understood those?" Ms. Lane answered that she had. *Id.* at 44. Neither party challenged Ms. Lane for cause. *Id.* at 44-45.

The jury was struck on September 28, 1998, and Ms. Lane was selected as a juror. D.14-6:25. The presentation of evidence began that same day. *See* D.14-6. The jury found Mr. Esposito guilty of all charges on September 30, 1998. D.13-6:4; D.14-16:73-79. Two days later, on October 2, 1998, the jury voted to sentence him to death. D.13-6:6; D.14-25:18-25.

In state habeas proceedings, Mr. Esposito's legal team interviewed jurors. Ms. Lane, by that time remarried and living in Maine, was interviewed by Rebecca Cohen, an experienced mitigation investigator, and provided a sworn affidavit discussing her thoughts about a polygraph examination Mr. Esposito had taken prior to trial and her views of the codefendant's relative culpability. *See* D.84-3 (Affidavit of Janice Harris, dated September 1, 2007). At the time she was interviewed, she did not disclose that she had visited her pastor after being questioned in voir dire, but

8

before she was selected to serve. *See* D.84-4 (Affidavit of Rebecca Cohen); D.84-5 (Affidavit of Kimberly Sharkey).[4]

Mr. Esposito did not learn of Ms. Lane's pastoral consultation for another 14 years. In July 2021, in preparation for an anticipated execution date, Mr. Esposito's legal team re-interviewed the jurors. During Ms. Lane's interview, she told Mr. Esposito's representatives that sometime "[a]fter being questioned as a potential juror during the voir dire process in 1998," she "sought counsel from [her] church pastor about being a juror in a capital trial," looking for answers about "reconciling

---

[4] Ms. Cohen had worked as a capital habeas mitigation investigator for well over a decade and had interviewed dozens of capital jurors regarding their experiences as jurors. Although she did not work for the Resource Center, Mr. Esposito's legal team asked her to interview Ms. Lane because Ms. Cohen had temporarily relocated to Maine to attend a documentary writing program. As she explained in her affidavit, a routine part of such interviews included questioning jurors about whether they had been exposed to third-party contacts or other extraneous influences. *See* D.84-4:4. Although Ms. Cohen does not currently have an independent recollection of her interview of Ms. Lane, she is confident that she would have asked questions intended to elicit such information, as that was a routine part of juror interviews she conducted; that she would have reported any third-party or extraneous influences she learned of to Mr. Esposito's legal team; and that she would have attempted to get a signed statement from Ms. Harris attesting to such misconduct. *See* D.84-4:3-5 (Cohen Affidavit).

One of Mr. Esposito's lawyers at the time, Kimberly Sharkey, also provided an affidavit attesting to the legal team's lack of knowledge that Ms. Harris had communicated with her pastor and read Bible verses he recommended in connection with her jury service. *See* D.84-5:4. As she explained, had this information been disclosed, the legal team would have investigated and developed this evidence and presented it in support of the broadly alleged juror-misconduct claims raised in Mr. Esposito's habeas petition. *See id.*

[her] civic duty with being a Christian." D.84-2:3 (7/2/21 signed statement by Janice Harris). Ms. Lane carried out her role as a juror in Mr. Esposito's capital trial only after reading Bible passages that her pastor recommended to answer her questions. *Id.*

Mr. Esposito's legal team undertook additional investigation into Ms. Lane's visit to her pastor before filing a Rule 60(b) motion in district court seeking to reopen the judgment in his federal habeas case. D.84 – D.84-5. As he explained in his supporting memorandum of law, Rule 60(b) provides the appropriate mechanism for allowing the juror misconduct claim to be addressed. Although Mr. Esposito had alleged in both his state and federal habeas petitions that jurors had "improper[l]y consider[ed] matters extraneous to the trial," and had "improper exposure to the prejudicial opinions of third parties" and "improper communications with third parties . . . ." *see* D.15-25:7 (state habeas petition); D. 1:26 (federal habeas petition), the juror-misconduct claim had never been decided on the merits in either state or federal court. *See* D.84-1:1-2, 13-14, 27; *see also* D.89:1-5 (reply brief). Accordingly, the claim did not present a second or successive petition governed by 28 U.S.C. § 2244(b)(3). *See, e.g.*, *Gonzalez v. Crosby*, 545 U.S. 524 (2005). Mr. Esposito further argued that his claim was appropriately addressed under either Rule 60(b)(2), which authorizes reopening a judgment based on newly discovered evidence, or Rule 60(b)(6), the "catchall category" that permits reopening for "any

10

other reason justifying relief from the operation of the judgment." *See* D.81-1:13-17.

Respondent countered that Mr. Esposito had failed to show that his motion was a true 60(b) motion, rather than a successive petition in disguise, and that, regardless, Mr. Esposito had not shown entitlement to relief as his motion was untimely under Rule 60(b)(2) and, under Rule 60(b)(6), he had failed to establish extraordinary circumstances justifying relief or that the motion had been filed within a reasonable time. *See* 86-1:8-17. In reply, Mr. Esposito disputed these arguments, additionally contending that, should Rule 60(b)(2) govern, its one-year statute of limitations should be equitably tolled. *See* D.89.

The district court dismissed the 60(b) motion, concluding it was really a second or successive habeas petition over which the court lacked jurisdiction. D.90:6-9. The court reasoned that, because Mr. Esposito had not argued that the district court's prior abandonment ruling was wrong, he had "neither attack[ed] some defect in the integrity of the federal habeas proceedings,' nor 'assert[ed] that a previous ruling which precluded a merits determination was in error.'" D.90:7 (quoting *Gonzalez*, 545 U.S. 524, 532 & n.4). Rather, "it was 'habeas counsel's omissions,' that led to the Court's previous ruling and the current 60(b) motion 'does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably.'" D.90:8 (quoting *Gonzalez*, 545 U.S. at 532

11

n.5). The motion, accordingly, was "actually an '"application for habeas relief' because it is a 'filing that contains one or more "claims"' which asserts a 'federal basis for relief from a state court's judgment . . . .'" *Id.* (quoting *Gonzalez*, 545 U.S. at 530) (citations omitted)). The district court did not address whether 60(b)(2) or (b)(6) would apply in the event the motion was a proper 60(b) motion.

As discussed below, the district court was wrong to conclude that Mr. Esposito's Rule 60(b) was in fact a second or successive petition in disguise. Because this Court "'may affirm on any ground supported by the record,' even if the district court did not rely on that ground,"[5] this brief will additionally address why Rule 60(b)(2) and/or 60(b)(6) may authorize reopening the judgment to allow the district court's consideration of Mr. Esposito's new evidence of juror misconduct.

## **SUMMARY OF THE ARGUMENT**

In denying Mr. Esposito habeas relief, the district court ruled that his juror-misconduct claim was "abandoned" and never addressed its merits. The court accordingly was wrong to conclude that Mr. Esposito's 60(b) motion to reopen that judgment constitutes a second or successive petition over which it lacked jurisdiction. The court's order dismissing the 60(b) motion accordingly should be vacated and the case remanded.

---

[5] *Olhausen v. Arriva Med., LLC*, 124 F.4th 851, 864 (11th Cir. 2024).

Additionally, although the district court did not consider whether Rule 60(b) could be used to reopen the judgment, Mr. Esposito's new evidence of juror misconduct can appropriately serve as the basis for reopening the judgment pursuant to Rule 60(b). The circumstances of the case justify application of Rule 60(b)(6). And, assuming that Rule 60(b)(2) provides the more appropriate mechanism, its one-year deadline for filing a motion is properly subject to equitable tolling. For these reasons, the case should be remanded to allow the district court, in the first instance, to consider Mr. Esposito's 60(b) motion.

## **ARGUMENT**

### I.    **Standards of Review**

This Court conducts *de novo* review of a district court's determination of whether a habeas petitioner's filing is a second or successive application for habeas relief under 28 U.S.C. § 2244 (b). *Boyd v. Sec'y*, 114 F.4th 1232, 1236 (11th Cir. 2024) (citing *Ponton v. Sec'y, Florida Dep't of Corr.*, 891 F.3d 950, 952 (11th Cir. 2018)). It also reviews questions about the district court's jurisdiction *de novo*. *Id.* (citing *Zakrzewski v. McDonough*, 490 F.3d 1264, 1267 (11th Cir. 2007)). Whether Mr. Esposito may seek to reopen his habeas case under Rule 60(b)(2) and/or Rule 60(b)(6) presents questions of law the district court did not address, but they would be reviewed *de novo* if it had. *See, e.g.*, *Stansell v. Bello*, 40 F.4th 1308, 1311 (11th Cir. 2022) (noting that "the determination of whether it is Rule 60(a) that authorizes

13

the correction—as opposed to Rule 59(e) or Rule 60(b)—is a question of law that we review *de novo*") (citation omitted)).

## II.    The District Court Erred in Construing Mr. Esposito's 60(b) Motion as a Successive Habeas Petition in Disguise.

The district court concluded that Mr. Esposito's 60(b) motion was in reality a second or successive habeas petition because Mr. Esposito had not argued that the court had previously erred in ruling that the juror-misconduct claim had been abandoned and, accordingly, Mr. Esposito's 60(b) motion did not fit into the category of circumstances the Supreme Court's decision in *Gonzalez* recognized as true 60(b) motions. As set forth below, the district court's ruling is based on a misunderstanding of *Gonzalez*. Its order dismissing the case should be vacated and the case remanded for further proceedings.

"Federal Rule of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). It "permit[s] the court to look back at the 'final' act in a case and provide relief from that act when appropriate." *Waetzig v. Halliburton Energy Servs.*, 145 S. Ct. 690, 697 (2025) (holding that a litigant's voluntary dismissal of case constitutes a "final" act that may be revisited under Rule 60(b), even though done without court involvement). The Rule provides in pertinent part:

14

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

> (4) the judgment is void;

> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In *Gonzalez v. Crosby*, the Supreme Court addressed whether Rule 60(b) was "subject to the additional restrictions that apply to 'second or successive' habeas petitions under the provisions of the [AEDPA]." *Gonzalez*, 545 U.S. at 526. The Court rejected this Court's *en banc* conclusion that the AEDPA barred Rule 60(b) motions under all circumstances "save one alleging fraud on the court under Rule 60(b)(3)." *Id.* at 528 (citing 28 U.S.C. § 2244(b)). Because 28 U.S.C. § 2244(b) "applies only where the court acts pursuant to a prisoner's 'application' for a writ of habeas corpus," a court must determine whether the Rule 60(b) motion "seeks

15

vindication of [a] claim," as that would make the motion, in essence, a habeas corpus application." *Id.* at 530-31. As the Court explained:

> In most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify. A motion can also be said to bring a "claim" if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is . . . entitled to relief."

*Id.* at 532 (emphasis in original). *See also Banister v. Davis*, 590 U.S. 504, 518 (2020) (observing that a 60(b) motion "counts as a second or successive habeas application" where it "'attacks the federal court's previous resolution of a claim on the merits'"); *Williams v. Chatman*, 510 F.3d 129-, 1293-94 (11th Cir. 2007) ("[A] a Rule 60(b) motion is to be treated as a successive habeas petition if it: (1) 'seeks to add a new ground of relief; or (2) 'attacks the federal court's previous resolution of a claim *on the merits.*'") (quoting *Gonzalez*, 545 U.S. at 532).

But a Rule 60(b) motion is *not* a disguised second or successive habeas petition, "when [it] attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532. "The narrow role carved out in *Gonzalez* for Rule 60(b) motions in the habeas context, in contrast, allows a district court to reopen nonmerits-based denials or dismissals of a state prisoner's federal habeas petition or claim, which resulted in no federal court having considered

the merits of the claim at all." *Richardson v. Thomas*, 930 F.3d 587, 596 (4th Cir. 2019. A defect in the proceedings may include "an allegation that the district court failed to reach the merits of a movant's claims . . . ." *Wukoson v. United States*, No. 23-10222, 2024 U.S. App. LEXIS 10070 at *4 (11th Cir. Apr. 25, 2024).

In this case, Mr. Esposito alleged in his state and federal habeas petitions that jurors had improper contact with third parties and were exposed to extraneous influences, but he was unable to discover sufficient evidence to prove these claims at the time. The juror misconduct claim was *never* addressed on the merits in either state or federal court. The state courts deemed the claim procedurally defaulted, because it had not been raised on direct appeal and Mr. Esposito had not established cause and prejudice to excuse the default, D.27-39:8, 12, and the federal district court dismissed the claims as abandoned (after denying an evidentiary hearing on the ground the claim was procedurally defaulted), D.42, D.67:85-86. There accordingly is no *merits* ruling for Mr. Esposito to attack. Instead, as he urged below, he has challenged defects in the prior district court proceedings. Juror Lane's initial failure to disclose her conduct undermined the reliability and fairness of the proceedings in both state and federal court. Moreover, the delay in discovering her prejudicial conduct prevented Mr. Esposito from showing cause and prejudice sufficient to excuse the procedural default the state courts found and the district court ratified. These defects precluded merits review of the juror misconduct claim when this case

was previously pending before the district court and they are a proper basis for reopening the judgment to allow consideration of the juror-misconduct claim.

The district court, however, concluded that Mr. Esposito's 60(b) motion was really a second or successive habeas claim in disguise. According to the court, because Mr. Esposito "does not argue that the Court . . . wrongly decided Petitioner abandoned his general juror misconduct claim," he was "neither attacking 'some defect in the integrity of the federal habeas proceedings,' nor 'assert[ing] that a previous ruling which precluded a merits determination was in error.'" D.90:7 (quoting *Gonzalez*, 545 U.S. at 532 & n.4). Instead, the court concluded, the 60(b) motion was "actually an 'application for habeas relief' because it is a 'filing that contains one or more 'claims'" which assert[] a 'federal basis for relief from a state court's judgment . . . .'" *Id.* (quoting *Gonzalez*, 545 U.S. at 530)). The court's analysis is flawed for two reasons.

First, the court's analysis rests on the notion that a "defect" in the prior habeas proceedings must be attributable to court error. But that is wrong. Rule 60(b)(1), which provides that a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect," on its own covers a court's legal and factual mistakes. *See Kemp v. United States*, 596 U.S. 528 (2022) (holding that Rule 60(b)(1) covers a court's factual and legal errors). Given that Rule 60(b) also authorizes reopening of a final judgment for a host of additional reasons, *see* Rule

60(b)(2) – (6), the district court was wrong to hold that Mr. Esposito's failure to argue that the court's abandonment ruling was error demonstrated that his 60(b) motion was really a second or successive petition. *See, e.g.*, *Buck v. Davis*, 580 U.S. 100, 104 (2017) (holding that the judgment should have been reopened under Rule 60(b)(6) to allow consideration of procedurally defaulted, but meritorious claim of capital sentencing-phase ineffectiveness due to intervening case law and new facts, even though district court's prior determination that the claim was procedurally defaulted was correct "under then-governing law"). Rather, the lack of a merits determination permits consideration of the juror-misconduct claim now. *See, e.g.*, *United States v. Dauenhauer*, 837 Fed. App'x. 580, 581 (9th Cir. 2021) (district court erred in construing 60(b) motion as unauthorized successive petition where district court had previously found the juror-misconduct claim "abandoned" and accordingly did not rule on the merits); *Barnett v. Roper*, 904 F.3d 623, 763 (8th Cir. 2018) (where 60(b) motion "challenged the procedural basis for the court's failure to address the merits of Barnett's claim," it "was not a successive claim under 28 U.S.C. § 2244(b)"); *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007) (where district court dismissed ineffective-assistance claim as procedurally defaulted and unexhausted, district court had jurisdiction to reopen the judgment under Rule 60(b) after petitioner subsequently exhausted claim in successive state habeas petition motion to reopen judgment to allow consideration of claim previously dismissed as

19

procedurally defaulted and unexhausted, where petitioner subsequently litigated the claim in a successive state habeas petition).[6]

The district court, moreover, has confused the goalpost with the path for getting there. The court concluded that Mr. Esposito's 60(b) motion was actually a second or successive petition because he ultimately seeks to "obtain 'an order vacating his conviction and death sentence,'" and accordingly "is a 'filing that contains one or more "claims"' which assert[] a 'federal basis for relief from a state court's judgment . . .'" D.90:7 (quoting D.84:2 and *Gonzalez*, 545 U.S. at 530)). But "whether a Rule 60(b) motion should be construed as a second or successive habeas petition depends on the nature of the arguments raised in the motion, not the

---

[6] Mr. Esposito, moreover, attempted to develop the juror misconduct claim in his initial federal habeas proceedings, by requesting an evidentiary hearing to address *inter alia* the claim that jurors improperly considered extraneous matters and were exposed to prejudicial opinions and communications of third parties. D.38:6-7. The district court denied the motion on the ground the juror misconduct claim was procedurally defaulted. D.42:6-9. Even though Mr. Esposito was then focused on misconduct that may have occurred due to the jury's extrajudicial crime-scene visit, Ms. Lane's pastoral visit may well have come to light had the district court permitted factual development of the juror misconduct claim during initial habeas proceedings. *Cf. Williams v. Taylor*, 529 U.S. 420, 442 (2000) (remanding for evidentiary hearing on juror bias and prosecutorial misconduct claims and holding that 28 U.S.C. § 2254(e)(2) did not bar factual development in federal court, even though his unsuccessful efforts to investigate the claims in state habeas proceedings were "prompted by concerns about a different juror"); *see also Williams v. True*, 39 Fed. App'x 830 (4th Cir. 2002) (affirming district court's grant of habeas relief on remand on the ground that the presence of biased juror and the prosecutor's failure to disclose the bias denied petitioner due process and a fair trial).

movant's goal in filing the motion." *In re Mitchell*, No. 13-6614, 2014 U.S. App. LEXIS 25329, *9 (2d Cir. 2014). As the Tenth Circuit Court of Appeals has explained, a 60(b) motion is not improper simply because "success on the motion would ultimately lead to a claim for relief under § 2255. What else could be the purpose of a 60(b) motion? The movant is always seeking in the end to obtain § 2255 relief. The movant in a true Rule 60(b) motion is simply asserting that he did not get a fair shot in the original § 2255 proceeding because its integrity was marred by a flaw that must be repaired in further proceedings." *In re Pickard*, 681 F.3d 1201, 1206 (10th Cir. 2012). *See, e.g. United States v. Marizcales-Delgadillo*, 243 Fed. Appx. 435, 438 (10th Cir. 2007) (observing that petitioner discussed the merits of his § 2255 motion in his Rule 60(b)(6) motion "on the theory that to prevail on the 60(b) motion, he had to show that there was some merit in the underlying claims in the § 2255 motion," an argument that did not "reassert[] a federal basis for relief from his sentence that would render the 60(b)(6) motion a second or successive § 2255 motion").[7]

---

[7] In *Rodriguez v. Mitchell*, 252 F.3d 191 (2d Cir. 2001), a pre-*Gonzalez* case, the Second Circuit Court of Appeals explained:

> [A] motion under Rule 60(b) and a petition for habeas have different objectives. The habeas motion under 28 U.S.C. § 2254 seeks to invalidate the state court's judgment of conviction. As to the motion under Rule 60(b), while it is undoubtedly a step on the road to the ultimate objective of invalidating the judgment of conviction, it does

The district court was wrong to conclude that Mr. Esposito's 60(b) motion was in reality a second or successive petition. The juror misconduct claim presented in his habeas petition was never adjudicated on the merits in federal court, despite Mr. Esposito's diligent efforts to develop the claim. As such, his 60(b) motion does not "attack[] the federal court's previous resolution of a claim on the merits," *Banister*, 590 U.S. at 518, and thus does not constitute a second or successive habeas application. The Court accordingly should vacate the judgment and remand for the district court's consideration of Mr. Esposito's 60(b) motion.

### III.    Rule 60(b) Provides Grounds for Reopening the Judgment.

The district court did not address whether Rule 60(b) would provide a basis to reopen the judgment. Mr. Esposito proposed below that either Rule 60(b)(2) or 60(b)(6) authorized reopening the judgment, although he suggested that Rule

---

not seek that relief. It seeks only to vacate the federal court judgment dismissing the habeas petition. The grant of such a motion would not have the effect of invalidating the state conviction. It would merely reinstate the previously dismissed petition for habeas, opening the way for further proceedings seeking ultimately to vacate the conviction. The fact that the  Rule 60(b) motion contemplates ultimately the vacating of the conviction is shared with every motion the petitioner might make in the course of pursuing his habeas[which,] like the motion under Rule 60(b), seek to advance the ultimate objective of vacating the criminal conviction. But each seeks relief that is merely a step along the way.

*Id.* at 198-99 (case cited approvingly by *Gonzalez*, 545 U.S. at 532 n.5).

60(b)(6) provided the more likely basis for relief. *See* D.84-1:13-17. Given this Court's authority to dispose of the case on grounds other than ones the district court considered, Mr. Esposito addresses these issues below.

### A. Rule 60(b)(6) Authorizes Reopening the Judgment in this Case.

Fed. R. Civ. P. 60(b)(6) provides that a court may lift a judgment "for any other reason that justifies relief," *i.e.*, for reasons other than those categories set forth in Rule 60(b)(1) – 60(b)(5):

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void; and
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

Even though the information regarding Ms. Lane's misconduct was "newly discovered," Mr. Esposito suggests that Rule 60(b)(6)'s "catch-all" category provides the proper subdivision of Rule 60(b) to seek reopening of the judgment to permit consideration of the juror misconduct claim, as he argued below. *See* D.84-1:14-16.

The Supreme Court has approved the application of 60(b)(6) to provide relief from judgment under similar circumstances. In *Liljeberg v. Health Servs. Acquisition Corp.*, the plaintiff moved under 60(b)(6) to reopen the judgment roughly ten months after the case had been affirmed on appeal, based on his post-appeal discovery that the district court judge who had conducted the bench trial had a disqualifying interest in the case that should have prompted his recusal. *Liljeberg*, 486 U.S. at 850-51. A judge whose impartiality in a bench trial may be questioned is, of course, of a kind with a juror whose neutrality may be doubted.

Indeed, other circuit courts have applied Rule 60(b)(6) to address claims of newly discovered juror misconduct. As the First Circuit held, "[i]n the absence of any provision of Rule 60(b) dealing explicitly with juror misconduct, appellants' motion was appropriately brought, and the district court properly viewed it, pursuant to Rule 60(b)(6)." *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 42 (1st Cir. 2015), *see also, e.g.*, *Campbell v. Miles*, No. 99-50814, 2000 U.S. App. LEXIS 39968 (5th Cir. Jul. 20, 2000) (applying 60(b)(6) to juror misconduct claim); *Konkel v. Bob Evans Farms*, 165 F.3d 275, 279, 282 (4th Cir. 1999) (affirming denial of 60(b)(6) relief on the ground that new evidence that jurors experimented with evidence during deliberations did not amount to misconduct).

As the Supreme Court has explained, relief under Rule 60(b)(6) is available only where the basis for relief is not addressed by the categories set forth in Rule

24

60(b)(1) – (5). *See Liljeberg*, 486 U.S. at 863, 863 n.11. Based on the criteria for establishing grounds to reopen the judgment on the basis of "newly discovered evidence" under Rule 60(b)(2), Mr. Esposito submits that Rule 60(b)(6) appears to be the more fitting category for this case. A litigant seeking to reopen a judgment on the basis of newly discovered evidence under 60(b)(2) must establish:

1.    that the evidence was newly discovered since the trial;

2.    that the movant exercised due diligence to discover it;

3.    that the evidence is not merely cumulative or impeaching;

4.    that the evidence is material; and

5.    that the evidence is such that a new trial would probably produce a new result.

*See, e.g.*, *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000) (citing *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1288 (11th Cir. 2000)); *see also, e.g.*, *Merilien v. Warden*, No. 2112415, 2023 U.S. App. LEXIS 23978, at *2-3 (11th Cir. Sept. 11, 2023) (same). This standard indicates that, even though evidence of Ms. Lane's misconduct was "newly discovered,"[8] it is not the type of

---

[8] Indeed, it stands to reason that most 60(b) motions are filed on the basis of "newly discovered" information, as the claims would otherwise likely have been raised before judgment was entered or soon thereafter. In *Liljeberg*, for instance, the grounds for the judge to have recused himself arose prior to the bench trial over which he presided and, at the very least, should have prompted his recusal at a time that would have allowed the plaintiff "to raise the issue in a motion for a new trial or on appeal without requiring that the case be reopened." *Liljeberg*, 486 U.S. at 863

new evidence contemplated by Rule 60(b)(2), which, rather, goes to the merits of the underlying case. Evidence of Ms. Lane's misconduct would not itself have been material evidence at trial, as it has no bearing on the questions before the jury, and it would accordingly not likely have produced a different verdict.

Assuming that Rule 60(b)(6) applies, Mr. Esposito has a compelling claim that his habeas case should be reopened. Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). *See, e.g.*, *Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453, 1458 (11th Cir. 1992) (observing that Rule 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses," giving "courts ample power to vacate judgments whenever such action is appropriate to accomplish justice.").

A litigant seeking relief under Rule 60(b)(6)'s catch-all category must establish "extraordinary circumstances." *Buck*, 580 U.S. at 123 (quoting *Gonzalez*, 545 U.S. at 535). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors," including "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial

---

n.11. That the plaintiff newly discovered the information about the judge's conflict did not make Rule 60(b)(2) the proper vehicle for relief.

process.'" *Id.* at 123 (quoting *Liljeberg*, 486 U.S. at 864). Additionally, a court should take into account "the capital nature of th[e] case." *Id.* at 125 (quoting *Buck* v. *Thaler*, 565 U. S. 1022, 1030 (2011) (Sotomayor, J., joined by Kagan, J., dissenting from denial of certiorari); *see id.* at 137 (Thomas, J., dissenting) (noting the "special weight" the Court placed "on the fact that this is a capital case" as a factor favoring Rule 60(b)(6) relief") (citation omitted). *See also, e.g.*, *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014) (holding that the district court abused its discretion in "fail[ing] to consider how, if at all, the capital aspect of this case or any other factor highlighted by the parties would figure into its 60(b)(6) analysis"); *Thompson v. Bell*, 580 F.3d 423, 444 (6th Cir. 2009) (noting the "the Supreme Court's admonition that "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged" and that, in a capital case, "the finality of the judgment against [the petitioner] must be balanced against the more irreversible finality of his execution") (quoting *Sanders v. United States*, 373 U.S. 1, 8 (1963)).

The underlying claim, moreover, raises the disturbing likelihood that Ms. Lane's decision to sentence Mr. Esposito to death was impacted by extraneous religious considerations that have no place in the jury room, especially in a capital case. "[T]he guarantee of an impartial jury [] is vital to the fair administration of justice" and litigants "can accordingly . . . challenge jury verdicts based on improper

extraneous influences such as prejudicial information not admitted into evidence, comments from a court employee about the defendant, or bribes offered to a juror . . . ." *Dietz v. Bouldin*, 579 U.S. 40, 48-49 (2016) (citing cases). This is particularly troubling in light of the discretion afforded jurors in determining whether the death penalty should be imposed.

Consistent with the Eighth Amendment, Georgia law requires jurors to consider "any mitigating circumstances" and "authorized" aggravating circumstances in determining sentence. O.C.G.A. § 17-10-30(b); *see also Gregg v. Georgia*, 428 U.S. 153, 164-66 (1976) (plurality) (approving Georgia's statutory scheme for capital sentencer's consideration of aggravating and mitigating circumstances in determining sentence). Yet, Ms. Lane's pastor's advice, including his referral to Bible verses, provided an "extra-judicial code of conduct [that] mandates death for numerous offenses" and that could be viewed by jurors as "an authoritative religious document" with "great potential to influence the jury's deliberations." *Jones v. Kemp*, 706 F. Supp. 1534, 1559 (N.D. Ga. 1989) (granting sentencing relief because the trial judge had permitted jurors to bring a copy of the Bible into sentencing deliberations). Numerous courts have granted sentencing relief on the basis of misconduct such as that claimed here. *See, e.g.*, *Barnes v. Thomas*, 938 F3d 526, 528, 532 (4th Cir. 2019) (granting sentencing relief where "a juror improperly consulted with her pastor about whether she could vote to impose the

28

death penalty without running afoul of her religious beliefs" and her pastor pointed her to "some scriptures in the Bible . . . that explained everything" and "assured her that . . . her religious beliefs permitted her to vote for the death penalty"); *Clark v. Broomfield*, No. 97-cv-20618, 2022 U.S. Dist. LEXIS 83532, *34-35 (N.D. Cal. May 9, 2022) (granting sentencing relief where a juror sought his minister's counsel about the death penalty during trial, noting that the evidence "supports the reasonable inference that, as the gravity of his role in the anticipated penalty phase began to weigh on him, [the juror] began to question his preconceptions about the death penalty" and that the juror's "'useful' conversation with his minister freed him from the doubt that likely caused him to seek out his minister's advice in the first place and steeled his resolve to adhere to his prior opinion about the propriety of the death penalty"); *People v. Hensley*, 330 P.3d 296, 319-26 (Cal. 2014) (vacating death sentence where juror consulted his pastor about the Bible's views on the death penalty and noting that the juror "actively solicited his pastor's comments about the role of mercy and sympathy while still wrestling with his decision, spoke to him about this subject for 15 to 20 minutes, and was given directions inconsistent with the jury instructions"); *People v. Harlan*, 109 P.3d 616 (Co. 2005) (death sentence vacated due to jurors' improper consideration of biblical passages advocating the death penalty); *Grooms v. Commonwealth*, 756 S.W.2d 131, 145 (Ky. 1988) (concluding that "highly prejudicial error occurred" where jurors relied on biblical

passages to impose the death penalty and noting that "[if] evidence of biblical references to capital punishment is not competent during the penalty phase of a capital trial, it is axiomatic that a jury may not independently consult the biblical scriptures for guidance in reaching its life and death decision"); *cf. Ex parte Troha*, 462 So. 2d 953 (Ala. 1984) (reversible error in non-capital case where "juror's conversation with his minister brother and the selective reference to specific Biblical passages might have unlawfully influenced the verdict rendered").

Mr. Esposito thus has a compelling basis to seek relief under Rule 60(b)(6). Given the extraordinary circumstances of the case, the Court should remand the case for the district court to consider the equities in the first instance.

**B.     In the Alternative, in the Event Discovery of Juror Misconduct Should Be Considered "Newly Discovered Evidence" Under Rule 60(b)(2), Equitable Tolling Should Apply Based on Mr. Esposito's Diligent Efforts to Discover the Evidence of Misconduct during State Habeas and Initial Federal Proceedings.**

Mr. Esposito has argued in the alternative that Rule 60(b)(2) authorizes the court to reopen the judgment. *See* D.84-1:16-17. Under Rule 60(b)(2), a movant may seek to reopen the judgment where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to more for a new trial under Rule 59(b)." Fed.R.Civ.Pr. 60(b)(2). Mr. Esposito explained below how he satisfied the criteria for granting relief under Rule 60(b)(2) which, as noted, requires

30

that (1) the evidence was newly discovered since trial; (2) the movant exercised due diligence to discover it; (3) it is not merely cumulative or impeaching; (4) it is material, and (5) as a result of the new evidence, a new trial would probably produce a difference result. *See* D.84-1:17. In response, Respondent argued that this claim was out of time under Fed. R. Civ. P. 60(b)(3)(1), which provides that a motion brought pursuant to Rule 60(b)(1), (2), or (3) must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." *See* D.86-1:14-15. Mr. Esposito, in reply, urged that the deadline for filing a 60(b)(2) claim should be equitably tolled because he had diligently sought the evidence but did not discover it within the one-year period allowed by Rule 60(c)(1). *See* D.89:6-7.

Neither the Supreme Court, nor this Court have addressed whether equitable tolling may permit the filing of a 60(b)(2) motion more than a year after the challenged judgment. The general rule is that "filing deadlines ordinarily are not jurisdictional; indeed, [the Supreme Court has] described them as 'quintessential claim-processing rules.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013) (citations omitted). In turn, nonjurisdictional limitations periods are presumptively subject to equitable tolling." *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 208 (2022) (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)); *see also Holland v. Florida*, 560 U.S. 631, 656-46 (2010) ("[A]

nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in *favor* 'of equitable tolling.'") (emphasis original).[9]

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Here, Mr. Esposito meets that burden. He has diligently sought to pursue his rights, filing timely petitions for habeas relief in state and federal court, and vigorously litigating those petitions, and raising the issue of juror Lane's misconduct promptly upon its discovery. Moreover, he attempted to discover juror misconduct during state habeas proceedings by interviewing the jurors who decided his case, but was stymied in those efforts by Ms. Lane's failure to reveal her own misconduct at the time. He sought to develop juror-misconduct evidence in initial federal habeas proceedings as well, but the district court denied his motion for an evidentiary hearing. Finally, after learning of the misconduct while re-interviewing jurors in anticipation of an execution warrant, he diligently investigated the facts in advance

---

[9] In *Holland*, the Supreme Court held that the AEDPA's one-year statute of limitations was subject to equitable tolling. In so holding, the Court noted that, in the case of the AEDPA, the presumption in favor of equitable tolling is "reinforced by the fact that '"equitable principles"' have traditionally '"governed"' the substantive law of habeas corpus," and that it would require "the 'clearest command'" to "displace the court's traditional equitable authority . . . ." *Id.* at 646 (citations omitted).

of filing his 60(b) motion in order to present a coherent claim to the district court—despite the difficulties posed to the investigation by the ongoing COVID-19 global pandemic. These factors demonstrate that the one-year filing deadline applied to Rule 60(b)2) motions should be equitably tolled in this case.

Mr. Esposito acknowledges that the Fourth Circuit Court of Appeals recently held that the one-year time period for moving for relief from judgment pursuant to Rule 60(b)(1), (2), and (3), *see* Rule 60(c)(1), cannot be equitably tolled. *See United States v. Williams*, 56 F.4th 366 (4th Cir. 2023). In *Williams*, a non-capital case, the defendant discovered evidence that the prosecution had misrepresented the reliability of its DNA evidence in his § 2255 proceedings four years before and sought to reopen the judgment under Rule 60(b)(3), the provision governing fraud, misrepresentation or misconduct by the opposing party. When initially before the court, the Fourth Circuit had vacated the district court's dismissal of the 60(b) motion, holding that the court had erred in construing it to be an unauthorized successive § 2255 motion. *United States v. Williams*, 753 Fed. App'x. 176, 176-77 (4th Cir. 2019). The court remanded the case to give Williams "the 'opportunity to make a case for timely filing.'" *Id.* at 178 (quoting *United States v. McRae*, 793 F.3d 392, 401 (4th Cir. 2015).[10] On remand, the district court held that the 60(b) motion

---

[10] In *McRae*, the court made clear that the 60(b) movant might "make a case for timely filing" by "com[ing] forward with evidence that might justify the

was untimely, that Williams was not entitled to equitable tolling, and that he regardless would lose on the merits. *Williams*, 56 F.4th at 369.

On its second review of the case, the Fourth Circuit affirmed. The court relied on the Supreme Court's intervening decision in *Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2018), to conclude that a late-filed Rule 60(b)(2) motion is not subject to equitable tolling because a separate civil rule of procedure, Fed. R. Civ. P. 6(b), which authorizes district courts, for good cause, to "extend the time" for "an act [that] must be done within a specified time," expressly excepts extensions of time "under Rules 50(b) and (d), 52(b), 59(b), (d)), and €, and 60(b)." Fed. R. Civ. P. 6(b)(2). But, *Williams* notwithstanding, *Nutraceutical*, which considered different rules under different circumstances, does not compel the same conclusion here.

In *Nutraceutical*, the plaintiff delayed filing a request to appeal the district court's denial of class certification in reliance on the district court's extension of time for filing a motion to reconsider the order. But, under Fed. R. Civ. P. 23(f), a litigant must seek an interlocutory appeal from the grant or denial of class certification within 14 days of the order. Instead, the plaintiff moved for reconsideration after the 14 days had past and, only sought permission to appeal after the district court had denied his motion for reconsideration, well past the initial 14-

---

application of equitable tolling or otherwise establish that his claims are not time-barred." *McRae*, 793 F.3d at 401.

day deadline. *Nutraceutical*, 586 U.S. at 190-91. Despite the plaintiff's untimely motion, the Ninth Circuit held "the Rule 23(f) deadline should be 'tolled' under the circumstances[,] reason[ing] that Rule 23(f)'s time limit is 'non-jurisdictional, and that equitable remedies softening the deadline are therefore generally available.'" *Id.* at 191. The Supreme Court disagreed.

The Supreme Court acknowledged that "[b]ecause Rule 23(f)'s time limitation is found in a procedural rule, not a statute, it is properly classified as a nonjurisdictional claim-processing rule" that can be waived or forfeited by an opposing party." *Id.* at 192 (citations omitted). Nonetheless, "some claim-processing rules are 'mandatory'—that is they are 'unalterable' if properly raised by an opposing party." *Id.* (citations omitted). The Court explained, "[w]here the pertinent rule or rules invoked show a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." *Id.* at 192-93. The Court noted that "the simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that tolling is unavailable." *Id.* at 193. But, the Court found intent to preclude tolling in a separate appellate rule, Fed. R. App. P. 26(b), which "single[s] out Civil Rule 23(f) for inflexible treatment." *Id.* Although Rule 26(b) provides courts the authority to "extend the time prescribed by these rules or by its order to perform any act, or may permit an act to be done after that time expires," a

court "may not extend the time to file [*inter alia*] a petition for permission to appeal . . . ." Fed. R. App. P. 26(b)(1). Accordingly, the Supreme Court held, the circuit court erred in accepting the untimely petition based on tolling.

Significantly, the Court's decision in *Nutraceutical* was narrow and did not create a bar to equitable tolling either under Fed. R. App. P. 26(b) or the similarly worded Fed. R. Civ. P. 6(b). The Court noted that it had "no occasion to address the effect of a motion for reconsideration filed within the 14-day window" and, because "nothing the District Court did misled Lambert about the appeal filing deadline," the Court "similarly [had] no occasion to address the question whether his motion would have been timely if that had occurred." 586 U.S. at 197 n.7 Nor, the Court observed, did it need "to address whether an insurmountable impediment to filing timely might compel a different result." *Id.* The Court, accordingly, expressly reserved consideration of whether stronger equitable considerations would warrant equitable tolling.[11] As such, *Nutraceutical* does not compel a determination that equitable tolling may not be applied in this matter.

---

[11] As the petitioner observed in oral argument, disallowing tolling in the case would not create any "catastrophic or harsh consequences," given that the plaintiff would have the right to appeal the class certification denial once a final judgment is entered in the case. Oral Argument Transcript in *Neutraceutical Corp. v. Lambert*, No. 17-1094 (Nov. 27, 2018), at 25. The same cannot be said here.

There are additional grounds, moreover, to question the scope of *Nutraceutical*. Both Fed. R. App. P. 26(b), the rule on which the *Nutraceutical* Court relied for concluding that the 14-day deadline to file an interlocutory appeal could not be equitably tolled, and Fed. R. Civ. P. 6(b), the rule on which the *Williams* court relied, expressly address a court's authority to "extend the time." But, an "extension of time" is *not* the same thing as equitably tolling a limitations period. To the contrary, an "extension" provides "a period of *additional* time to take an action, make a decision accept an offer, or complete a task." *Black's Law Dictionary*, 9th ed. (2022), at 663. "Tolling," on the other hand, is "to stop the running of" or "abate" the limitations period. *Id.* at 1625. As the Supreme Court has explained, equitable tolling "pauses the running of, or 'tolls' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Alvarez*, 572 U.S. 1, 10 (2014). *See, e.g.*, *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 473 (1975) (Marshall, J., concurring in part and dissenting in part) (noting that the "common understanding" of tolling is that "tolling entails a suspension rather than an extension of a period of limitations"). Equitable tolling is appropriate in this case, where Mr. Esposito diligently sought to discover evidence of juror misconduct but, due to no fault of his own, did not obtain the evidence until after his habeas petition was denied.

Accordingly, in the event this Court concludes that Rule 60(b)(2), rather than 60(b)(6), governs the circumstances of this case, the Court should remand to permit the district court to consider his Rule 60(b) motion in the first instance.

## **CONCLUSION**

For the reasons set forth above, Mr. Esposito respectfully requests that this Court vacate the district court's judgment dismissing his Rule 60(b) motion for lack of jurisdiction and remand the case to the district court with instructions to consider the Rule 60(b) motion.

This 25th day of April, 2025.

Respectfully submitted,

Marcia A. Widder (Ga. 643407)
Georgia Resource Center
104 Marietta St. NW, Suite 260
Atlanta, Georgia 30303
(404) 222-9202
Fax: (404) 301-3315
grc@garesource.org

COUNSEL FOR APPELLANT,
JOHN ESPOSITO

38

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JOHN ESPOSITO,                    )
    Petitioner-Appellant,        )
                                 )
vs.                              )        Case No. 22-11538
                                 )
GDCP WARDEN,                      )
    Respondent-Appellee.         )

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing brief is in compliance with Federal Rule of Appellate Procedure 32(a)(5), (6) because it has been prepared in Times New Roman 14 point, a proportionally-spaced typeface, using the Microsoft Word word-processing software. This brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 11,229 words.

_____

Marcia A. Widder

COUNSEL FOR APPELLANT

39

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JOHN ESPOSITO,                    )
    Petitioner-Appellant,         )
                                  )
vs.                               )          Case No. 22-11538
                                  )
GDCP WARDEN,                      )
    Respondent-Appellee.          )

## NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

This is to certify that I have filed the foregoing pleading by uploading it using this Court's ECF e-filing system, which will serve an electronic copy on counsel for Appellee:

      Stephen J. Petrany
      Solicitor General for the State of Georgia
      Georgia Department of Law
      40 Capitol Square, S.W.
      Atlanta, Georgia 30334-1300
      spetrany@law.ga.gov

      Sabrina Graham, Esq.
      Senior Assistant Attorney General
      Assistant Attorney General
      132 State Judicial Building
      40 Capitol Square, S.W.
      Atlanta, Georgia 30334-1300
      sgraham@law.ga.gov

      William D. Rodenberg
      Georgia Department of Law
      40 Capitol Square, S.W.
      Atlanta, Georgia 30334-1300
      wrodenberg@law.ga.gov

This 25th day of April, 2025.

_____

Marcia A. Widder
Counsel for Petitioner
John Esposito